Filed 7/7/20

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF BUTTE COUNTY,<br><br>Respondent;<br><br>DONALD R. FERRARO,<br><br>Real Party in Interest. | C090226<br><br>(Super. Ct. No. 105509) |
| THE PEOPLE,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF BUTTE COUNTY,<br><br>Respondent;<br><br>ROGER HUNTER,<br><br>Real Party in Interest. | C089541<br><br>(Super. Ct. No. 105508) |

1

ORIGINAL PROCEEDINGS in mandate.  Jesus A. Rodriguez, Judge.  Denied.

Michael L. Ramsey, District Attorney, and Stacy J. Edwards, Deputy District Attorney, for Petitioners.

No appearance for Respondents.

Jeffrey S. Kross for Real Party in Interest Donald R. Ferraro.

Law Offices of Stephana L.M. Femino and Stephana L.M. Femino for Real Party in Interest Roger Hunter.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amicus Curiae, at the request of the Court of Appeal, on behalf of Real Parties in Interest.

# I.  INTRODUCTION

In 1990, real parties in interest Donald R. Ferraro and Roger Hunter pled guilty to second degree murder based on the same incident.  In 2019, they each filed a petition to obtain resentencing under newly enacted Penal Code section 1170.95.[1]  Section 1170.95 was enacted as part of Senate Bill No. 1437 (Stats. 2018, ch. 1015), which took effect January 1, 2019.  The legislation limits the circumstances under which a defendant can be found guilty of murder under the felony-murder rule or the natural and probable consequences doctrine.  The legislation applies retroactively through section 1170.95, which allows qualifying petitioners to have their murder convictions vacated and be resentenced.

The District Attorney for Butte County filed motions to strike the petitions for resentencing, arguing in part that Senate Bill No. 1437 (Senate Bill 1437) is an unconstitutional amendment of two prior initiative measures—Proposition 7 (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978)) and Proposition 115 (Prop. 115, as

---

[1]  Undesignated statutory references are to the Penal Code.

2

approved by voters, Primary Elec. (June 5, 1990)).  The respondent superior court denied the motions.  The District Attorney filed separate writ petitions in this court on behalf of the People challenging the superior court's rulings.

We join the other appellate courts who have addressed the issue in concluding that Senate Bill 1437 is not an invalid amendment of either Proposition 7 or 115 because the legislation did not add to or take away from any provision in either initiative.  (See, e.g., *People v. Bucio* (2020) 48 Cal.App.5th 300, 311-312; *People v. Cruz* (2020) 46 Cal.App.5th 740, 747 (*Cruz*); *People v. Solis* (2020) 46 Cal.App.5th 762, 769; *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 251; *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 275 (*Gooden*).)  Therefore, we deny the writ petitions.

## II.  BACKGROUND

*A.      Procedural Background*

After Senate Bill 1437 became effective, Ferraro and Hunter each filed petitions to obtain resentencing under section 1170.95.  Hunter checked boxes indicating:  (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he pled guilty in lieu of going to trial because he believed he could have been convicted of first or second degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine; and (3) he could not now be convicted of first or second degree murder because of the recent changes to sections 188 and 189.  Ferraro submitted a handwritten declaration that asserted more specifically: (1) a complaint was filed against him that allowed the prosecution to proceed against him under a theory of felony murder; (2) he pled guilty to second degree murder in lieu of going to trial because he believed he could have been convicted of second degree murder at trial pursuant to the felony murder rule; and (3) he could not now be convicted of second degree murder because of the recent changes to sections 188 and 189.

As to Hunter, the respondent court found a prima facie showing of entitlement to relief had been made, appointed counsel, and issued an order to show cause. (See § 1170.95, subd. (c).) As to Ferraro, the court appointed counsel and requested briefing from the District Attorney to assist in its determination of whether a prima facie showing had been made. The District Attorney responded by filing motions to strike both petitions. As relevant here, the District Attorney argued Senate Bill 1437 unconstitutionally amended Propositions 7 and 115.[2] The court denied the motions.

In this court, the District Attorney filed requests for a stay of the superior court proceedings and petitions for a writ of mandate and/or prohibition directing the respondent superior court to vacate its orders and enter new ones granting his motions.

We denied the stay requests, but issued orders to show cause why the relief prayed for in the writ petitions should not be granted. We also invited the Attorney General to file an amicus brief, and he did so, arguing Senate Bill 1437 does not amend either Proposition 7 or Proposition 115. In their returns, Ferraro and Hunter also argued Senate Bill 1437 is constitutional.

On this court's own motion, the two cases were consolidated for purposes of oral argument and decision only.

B.    *Legal Background Prior to 2019*

We begin by reviewing the relevant law prior to the passage of Senate Bill 1437, with an emphasis on the contributions of Propositions 7 and 115.

---

[2] In his motions to strike, the District Attorney also argued Senate Bill 1437 is unconstitutional because it violates the Victims' Bill of Rights Act of 2008, commonly known as Marsy's Law (Prop. 9, as approved by voters, Gen. Elec. (Nov. 4, 2008)), and the separation of powers doctrine. Neither argument has been raised before this court. We note these arguments were rejected in *People v. Lamoureux*, *supra*, 42 Cal.App.5th at pp. 252-266.

4

Section 187, subdivision (a) defines murder as "the unlawful killing of a human being . . . with malice aforethought." Malice may be express or implied. (§ 188.) It is express "when there is manifested a deliberate intention" to unlawfully take "the life of a fellow creature." (Former § 188, now § 188, subd. (a)(1).) It is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Former § 188, now § 188, subd. (a)(2).) " 'The statutory definition of implied malice has never proved of much assistance in defining the concept in concrete terms.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) Our Supreme Court has "interpreted implied malice as having 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.] The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life." ' " (*Ibid*.)

Prior to 2019, section 189 provided, in pertinent part: "All murder which is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under [s]ection 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree. All other kinds of murders are of the second degree." (Stats 2010, ch. 178, § 51.) "[S]ection 189 serves both a degree-fixing function and the function of establishing the offense of first degree felony murder. [Citation.] It defines second degree murder as well as first degree murder." (*People v. Harris* (2008) 43 Cal.4th 1269, 1295, emphasis omitted.) The

5

second degree felony-murder rule is based in statute as well—"specifically section 188's definition of implied malice."  (*People v. Chun*, *supra*, 45 Cal.4th at p. 1178.)

Under the felony-murder rule, "when the defendant or an accomplice kills someone during the commission, or attempted commission, of an inherently dangerous felony, the defendant is liable for either first or second degree murder, depending on the felony committed.  If the felony is listed in section 189, the murder is of the first degree; if not, the murder is of the second degree.  [Citations.]  Felony-murder liability does not require an intent to kill, or even implied malice, but merely an intent to commit the underlying felony."  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.)  Put differently, " '[t]he felony-murder rule imputes the requisite malice for a murder conviction to those who commit a homicide during the perpetration of a felony inherently dangerous to life.' "  (*People v. Chun*, *supra*, 45 Cal.4th at p. 1184.)

Section 189 has been amended multiple times, including, as relevant to these proceedings, by Proposition 115 and Senate Bill 1437.  Proposition 115, an initiative measure adopted in 1990, was "a comprehensive criminal justice reform package," (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 347) entitled the "Crime Victims Justice Reform Act" by its drafters, that adopted "a variety of changes and additions to our state Constitution and statutes" (*id.* at p. 340).  One such change was amending section 189 to add kidnapping, train wrecking, and certain sex offenses to the list of felonies that could support first degree felony-murder liability.  (Prop. 115, § 9.)

A non-killer's "liability for murder under the natural and probable consequences doctrine operates independently of the felony-murder rule."  (*People v. Chiu* (2014) 59 Cal.4th 155, 166.)  "The natural and probable consequences doctrine was recognized at common law and is firmly entrenched in California law as a theory of criminal liability."  (*Id*. at p. 163.)  The doctrine applies to both aiding and abetting and conspiracy theories of liability, and the operation of the doctrine is analogous in those contexts.  (*People v. Rivera* (2015) 234 Cal.App.4th 1350, 1356.)  As our Supreme Court has explained with

6

respect to the former theory of liability, " ' "[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime." ' " (*Chiu, supra*, at p. 161.) " 'Because the nontarget offense is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.' " (*Id*. at p. 164.)

Section 190 designates the punishment for murder. (*People v. Cooper* (2002) 27 Cal.4th 38, 40 (*Cooper*).) It too has been amended multiple times, including by the passage of Proposition 7 in 1978. The measure increased the punishment for first degree murder without special circumstances from a term of life imprisonment with parole eligibility after seven years to a term of 25 years to life. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1079, fn. 6; Prop. 7, §§ 1-2.) Proposition 7 also increased the punishment for second degree murder to a term of life imprisonment with parole eligibility after 15 years. (Prop. 7, §§ 1-2.) Additionally, the initiative expanded the special circumstances that would subject a defendant to a sentence of death or life without the possibility of parole. (See *People v. Weidert* (1985) 39 Cal.3d 836, 844; see also Prop. 7, §§ 5-6.)[3]

---

[3] Proposition 7 amended section 190.2, subdivision (b) to state: "Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting any actor in the commission of murder in the first degree shall" be punished by death or life in prison without parole when one or more specified special circumstances are found true, including the felony-murder special circumstance set forth in section 190.2, subdivision (a)(17). (Prop. 7, § 6.) The District Attorney asserts in passing that Senate Bill 1437 "frustrates the relatively lesser mental state requirements for the special circumstances in section 190.2, subdivisions (a)(4), (a)(5), (a)(6) and (a)(17) by requiring a greater mental state for first-degree murder than was required when" Proposition 7 was passed. He fails to develop the point. Moreover, these special circumstances, as set forth in Proposition 7, have no bearing on the questions before us. Section 190.2, subdivision (b), as added by Proposition 7, was subsequently deleted and replaced by subdivisions (c) and (d) by

7

In addition to amending section 189, Proposition 115 amended section 190.2 to add subdivisions (c) and (d). (Prop. 115, § 10.) These subdivisions require a sentence of death or life without the possibility of parole where the defendant is not the actual killer as follows: "(c) Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4. [¶] (d) Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4." (See also Prop. 115, § 10.) Previously, "state law made only those felony-murder aiders and abettors who intended to kill eligible for a death sentence." (*People v. Banks* (2015) 61 Cal.4th 788, 798.)

C.      *Senate Bill 1437*

In enacting Senate Bill 1437, the Legislature declared "a need for statutory changes to more equitably sentence offenders in accordance with their involvement in

---

Proposition 115, which we will discuss next. Section 190.2, subdivisions (a)(4) and (a)(6), apply to first-degree murder committed by means of a destructive device and mandate a punishment of death where the device was planted, hidden, delivered, or attempted to be delivered, and the defendant knew or should have known his or her acts would create a great risk of death. Section 190.2, subdivision (a)(5) applies when the murder was committed for the purpose of avoiding or preventing arrest, or perfecting or attempting to perfect, an escape from custody. We see no basis to infer Senate Bill 1437 has interfered with the operation of these special circumstances.

homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Further, "[r]eform is needed in California to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (*Id.*, subd. (e).) Specifically, "[i]t is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.*, subd. (f).)

Senate Bill 1437 amended section 188 to provide: "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e), as amended, provides that a participant in the perpetration or attempted perpetration of felony specified in subdivision (a) in which death occurs is liable for murder only if one of the following is proven: "(1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2."[4] Thus, "the standard under section 189, subdivision (e)(3) for holding a defendant liable for felony murder is [now] the same as the standard for finding a special circumstance under section 190.2[, subdivision ](d), as the former

---

[4] Section 189, subdivision (e) does not apply if the victim was a peace officer who was killed in the course of his or her duties, and the defendant knew or reasonably should have known these facts. (§ 189, subd. (f).)

provision expressly incorporates the latter." (*In re Taylor* (2019) 34 Cal.App.5th 543, 561.)

Senate Bill 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)  Section 1170.95 sets procedures for the review of such petitions (*id.*, subds. (b)-(c)) and, where required, a "hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence" (*id.*, subd. (d)).  If the petitioner is entitled to relief but "murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." (*Id.*, subd. (e).)

## II.  DISCUSSION

A. *Amendments to Initiatives*

Article II, section 10, subdivision (c) of the California Constitution provides that "[t]he Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits

amendment or repeal without the electors' approval." Thus, "[t]he Legislature may not amend an initiative statute without subsequent voter approval unless the initiative permits such amendment, 'and then only upon whatever conditions the voters attached to the Legislature's amendatory powers.' " (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 568 (*Pearson*).) "The evident purpose of limiting the Legislature's power to amend an initiative statute ' "is to 'protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent.' " ' " (*County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 211 (*Commission on State Mandates*).)

Proposition 7 "did not authorize the Legislature to amend its provisions without voter approval." (*Cooper*, *supra*, 27 Cal.4th at p. 44.) "[T]he Legislature may amend Proposition 115's statutory provisions without voter approval, but only by a two-thirds vote of each house." (*Pearson*, *supra*, 48 Cal.4th at p. 569.) "The Legislature passed Senate Bill 1437 by a two-thirds vote in the Senate and a less-than-two-thirds majority in the Assembly." (*Gooden*, *supra*, 42 Cal.App.5th at p. 277.) Thus, Senate Bill 1437 may not amend Proposition 7 or 115 without violating article II, section 10, subdivision (c) of the California Constitution. The issue presented by this proceeding is therefore whether Senate Bill 1437 constitutes an amendment of Proposition 7 or 115 for purposes of this constitutional provision.

Our Supreme Court has described such an amendment "as 'a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision.' [Citation.] But this does not mean that any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes. 'The Legislature remains free to address a " 'related but distinct area' " [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit." ' " (*Pearson*, *supra*, 48 Cal.4th at p. 571.) In deciding whether a particular piece of legislation has amended an initiative,

11

our Supreme Court has framed the question as simply whether the legislation "prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Ibid*.; see also *Cooper*, *supra*, 27 Cal.4th at p. 47.)

In order to answer this question, we must first decide what the voters contemplated in enacting each initiative. (*Pearson*, *supra*, 48 Cal.4th at p. 571.) The District Attorney begins his arguments with the broad purposes of each initiative, but " '[t]he voters should get what they enacted, not more and not less.' [Citation.] [¶] This is a question of statutory interpretation. When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Ibid*.)

*1.    Proposition 7*

As set forth above, Proposition 7 increased the punishment for murder. After passage of Proposition 7, section 190 provided: "Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5. [¶] Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life." (Prop. 7, § 2.)

This court has previously explained, in part, that "[a]n amendment is '. . . any change of *the scope or effect* of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and

12

original in form.' " (*Franchise Tax Bd. v. Cory* (1978) 80 Cal.App.3d 772, 776 (*Cory*), italics added.) The District Attorney utilizes the italicized portion of this definition in asserting Senate Bill 1437 unconstitutionally "narrows the scope of" Proposition 7. Proposition 7 applies to every person guilty of murder. Senate Bill 1437 does not narrow its scope in that sense. The District Attorney argues Senate Bill 1437 narrows the scope of Proposition 7 because it limits the number of people who are eligible for punishment under Proposition 7. This interprets *Cory* to invalidate any legislation that has any impact upstream of an initiative measure. The suggestion that any legislation that changes the scope or effect of an initiative in this broad sense constitutes an amendment is incorrect.

*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231 is instructive. In *Matosantos,* the Legislature's dissolution of redevelopment agencies was challenged on the grounds the legislation was inconsistent with a 1952 initiative. (*Id*. at p. 256.) "In the aftermath of World War II, the Legislature authorized the formation of community redevelopment agencies in order to remediate urban decay." (*Id*. at p. 245.) Redevelopment agencies generally could not levy taxes and relied on tax increment financing for funding. (*Id*. at p. 246.) Through the 1952 initiative, the voters amended the Constitution to make "express the Legislature's authority to authorize property tax increment financing of redevelopment agencies and projects." (*Id.* at p. 256.) Our Supreme Court explained that nothing in the initiative's "text creates an absolute right to an allocation of property taxes." (*Id*. at p. 257.) "Nor does anything in the text . . . mandate that redevelopment agencies, once created, must exist in perpetuity." (*Ibid*.) We observe that the dissolution of redevelopment agencies inherently had an effect on initiative provisions authorizing their funding—it rendered them unnecessary and unutilized. But the funding of redevelopment agencies and the existence of redevelopment agencies are different, and the Legislature retained the power to alter the latter without doing so constituting an invalid amendment to the former.

13

Further, in *People v. Kelly* (2010) 47 Cal.4th 1008 (*Kelly*), our Supreme Court noted our opinion in *Cory*, and others citing it, "contain broad definitions of the amendment process in this context" and our Supreme Court has not "endorse[d] any such expansive definition" of an amendment for purposes of article II, section 10, subdivision (c) of the California Constitution. (*Kelly, supra*, at p. 1026.)[5] The court in *Kelly* further "question[ed] some of the broad language in prior decisions such as *Cory* . . . , which in some respects conflicts with" language the court *has* adopted. (*Id*. at p. 1026, fn. 19.) In particular, our Supreme Court has emphasized that "[t]he Legislature remains free to address a ' "related but distinct area" ' [citations] or a matter that an initiative measure 'does not specifically authorize *or* prohibit.' "[6] (*Id*. at pp. 1025-1026; accord *Pearson, supra*, 48 Cal.4th at p. 571.) This is the principle that guides the outcome in this proceeding. As the appellate court in *Gooden* explained, "Senate Bill 1437 presents a classic example of legislation that addresses a subject related to, but distinct from, an area

---

[5] In *Kelly*, the court explained that in this context "[i]t is sufficient to observe that . . . an amendment includes a legislative act that changes an existing initiative statute by taking away from it." (*Kelly, supra*, 47 Cal.4th at pp. 1026-1027.) Subsequent opinions indicate there is no need to further debate the standard of review. (See *Pearson, supra*, 48 Cal.4th at p. 571 ["In deciding whether this particular provision amends Proposition 115, we simply need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits"]; see also *Cooper, supra*, 27 Cal.4th at p. 44 ["An amendment is a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision"].)

[6] Likewise, the court in *Kelly* observed "decisions frequently have asserted that courts have a duty to ' " 'jealously guard' " ' the people's initiative power, and hence to ' " 'apply a liberal construction to this power wherever it is challenged in order that the right' " ' to resort to the initiative process ' " 'be not improperly annulled' " ' by a legislative body. [Citations.] [¶] At the same time, despite the strict bar on the Legislature's authority to amend initiative statutes, judicial decisions have observed that this body is not thereby precluded from enacting laws addressing the general subject matter of an initiative. The Legislature remains free to address a ' "related but distinct area" ' [citations] or a matter that an initiative measure 'does not specifically authorize *or* prohibit.' " (*Kelly, supra*, 47 Cal.4th at pp. 1025-1026.)

addressed by an initiative." (*Gooden, supra*, 42 Cal.App.5th at p. 282; accord *Cruz, supra*, 46 Cal.App.5th at p. 756.) Senate Bill 1437 does not alter the punishment for murder, but the offense. "A criminal offense is . . . a collection of specific factual elements that the Legislature has chosen to define as a crime." (*People v. Anderson* (2009) 47 Cal.4th 92, 101.) " ' "[P]unishment" has always meant a "fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him." ' " (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1107.) While crimes and their punishment are invariably linked (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 478), " 'the definition of crimes generally has not been thought automatically to dictate what should be the proper penalty' " (*People v. Banks, supra*, 61 Cal.4th at p. 801). The language of section 190 illustrates the point. It provides that "every person guilty of murder in the first degree" and the second degree shall receive specified punishments. The statute provides a punishment after guilt has already been established.

In contrast to Proposition 7, Senate Bill 1437 neither sets nor prohibits a punishment for any type of murder. The punishment applicable to a murder conviction remains the same. For instance, "[a]fter the enactment of Senate Bill 1437, a first degree murder conviction [without special circumstances] still results in a penalty of life imprisonment with the possibility of parole after 25 years and a second degree murder conviction results in a penalty of life imprisonment with the possibility of parole after 15 years, as required by Proposition 7. Senate Bill 1437 does not authorize reduced sentences for such convictions. Thus, Senate Bill 1437's amendments do not take away from Proposition 7's provisions." (*Cruz, supra*, 46 Cal.App.5th at p. 754.) The provisions of Senate Bill 1437 are related to but distinct from the provisions of Proposition 7.

The District Attorney argues that "[b]y specifically referencing 'first-degree' and 'second-degree' murder in the language of Prop. 7, the voters of Prop. 7 adopted the

15

provisions of sections 187, 188, and 189, including how they had long been judicially construed, in the form they existed in 1978. . . . Thus, neither sections 187, 188, and 189 nor their judicial constructions may be amended or altered without voter approval." The District Attorney therefore contends Senate Bill 1437 unconstitutionally amends Proposition 7 by eliminating imputed malice from section 188 and adding requirements for first degree felony murder to section 189. His arguments fail because his underlying assumption that Proposition 7 prevents any amendment of sections 187 through 189 is incorrect.

The District Attorney's argument relies on the " 'well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary.' " (*Palermo v. Stockton Theatres* (1948) 32 Cal.2d 53, 58-59 (*Palermo*).) But our Supreme Court in *Palermo* also recognized a related rule " 'that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time, and . . . as they may be subjected to elimination altogether by repeal.' " (*Id*. at p. 59.)

A reference to persons found guilty of first degree and second degree murder is not a specific reference to the provisions of sections 187, 188, or 189 but a general reference to a body of laws. (*Gooden*, *supra*, 42 Cal.App.5th at pp. 282-284.) As set forth above and as indicated by the District Attorney's own arguments, the concepts of first and second degree murder are broader than sections 187 through 189 and even statutory law in general. Thus, a reference to persons found guilty of first degree and second degree murder is a general reference and includes any later changes to the law.

16

The District Attorney relies on *People v. Anderson* (2002) 28 Cal.4th 767 to support his argument that a reference to first or second degree murder is specific. We are not persuaded. In *Anderson*, our Supreme Court construed section 26, which provides that the defense of duress does not apply when "the crime be punishable with death." The specific question posed in *Anderson* was "whether the exception for a crime punishable with death changes with every change in death penalty law, which would mean that . . . today it includes only first degree murder with special circumstances." (*Anderson, supra,* at pp. 774-775.) In reference to the principles of statutory construction articulated in *Palermo*, the *Anderson* court explained that whether the reference to a "crime . . . punishable with death" (§ 26) was general or specific was "*not so clear.* Section 26 does not cite specific statutes, but the subject of crimes punishable with death is quite specific." (*Id*. at p. 779, italics added.) The court did not decide the issue based on any conclusion that the reference was specific: "In any event, when the statutory words themselves 'do not make clear whether [the statute] contemplates only a time-specific incorporation, "the determining factor will be . . . legislative intent." ' " (*Ibid*.) Our Supreme Court found no suggestion that the Legislature "intended the substantive law of duress to fluctuate with every change in death penalty law." (*Id*. at p. 775.) The court explained that, when read in conjunction with other statutes, it was clear the reference to a "crime" punishable by death was to murder generally and not only those forms of murder punishable by death. (*Id*. at p. 776.) Here, we agree with those authorities that have concluded nothing in the text of Proposition 7 indicates the voters intended to freeze the definition of murder as it existed in 1978. (*Cruz, supra*, 46 Cal.App.5th at p. 758; *Gooden, supra*, 42 Cal.App.5th at pp. 283-284.)

Even if we were to consider the ballot materials, we also agree with these same authorities that, to the extent they are relevant, the ballot materials do not indicate Proposition 7 was intended to freeze the law regarding murder liability. (*Cruz, supra*, 46 Cal.App.5th at pp. 757-758; *Gooden, supra*, 42 Cal.App.5th at pp. 284-285.) The

17

proponents of Proposition 7 described the measure as "the nation's toughest, most effective death penalty law." (Ballot Pamp., Gen. Elec. (Nov. 7, 1978), argument in favor of Prop. 7, p. 34.) The ballot materials contain no discussion of the parameters of liability for murder generally. Proponents argued the law would provide judges and law enforcement "a powerful weapon of deterrence in their war on violent crime." (*Ibid.*) But they were not asked to vote on freezing the law regarding liability for murder as a deterrent and " 'we may not properly interpret the measure in a way that the electorate did not contemplate.' " (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 909.) The District Attorney's suggestion that the electorate's intent in enacting Proposition 7 was to "broaden liability" for murder is without merit. We presume the electorate was aware of the requirements for a conviction of murder. (See *People v. Gonzales* (2017) 2 Cal.5th 858, 869 ["The electorate 'is presumed to be aware of existing laws and judicial construction thereof' "].) Nonetheless, they evinced no intent to freeze or broaden that liability through Proposition 7.

Indeed, we are unaware of any decision in the four decades since Proposition 7 passed that has treated the definition of murder as unalterable based on that initiative. For instance, in 2014, our Supreme Court held that a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine based on public policy: "[T]he connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated to impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine, especially in light of the severe penalty involved and the . . . public policy concern of deterrence." (*People v. Chiu, supra*, 59 Cal.4th at p. 166; see *id.* at pp. 158-159.) Our Supreme Court did not discuss the electorate's understanding of the scope of the doctrine in setting that penalty or suggest that this understanding was a consideration in the court's ability to set limits on the doctrine. We must therefore reject the People's assertion that "neither

18

sections 187, 188, and 189 nor their judicial constructions may be amended or altered without voter approval."

The District Attorney further argues that, at a minimum, Proposition 7 precludes the Legislature from "retroactively redefining murder to vacate convictions that were unquestionably lawful at the time they were entered," thereby reducing the punishment the electorate mandated for murder and effectively granting legislative commutation. We disagree. "The effect of a successful petition under section 1170.95 ' " 'is to vacate the judgment . . . as if no judgment had ever been rendered.' " ' [Citations.] Thus, the resentencing procedure established by section 1170.95—like the remainder of the statutory changes implemented by Senate Bill 1437—does not amend Proposition 7." (*Gooden, supra*, 42 Cal.App.5th at p. 286.)

    2.    *Proposition 115*

As relevant to this proceeding, Proposition 115 amended section 189 to add kidnapping, train wrecking, and certain sex offenses to the list of predicate offenses giving rise to first degree felony-murder liability by adding the italicized language: "All murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, *kidnapping, train wrecking*, or any act punishable under Section *286*, 288, *288a, or 289*, is murder of the first degree; and all other kinds of murders are of the second degree." (Prop. 115, § 9.) "When an existing statutory section is amended—even in the tiniest part—the state Constitution requires the entire section to be reenacted as amended." (*Commission on State Mandates, supra*, 6 Cal.5th at p. 208.) "The portions that are not altered are to be considered as having been the law from the time when those provisions were enacted." (Gov. Code, § 9605, subd. (a); see also *Cooper, supra*, 27 Cal.4th at p. 43, fn. 4.)

19

As set forth above, "[t]he evident purpose of limiting the Legislature's power to amend an initiative statute ' "is to 'protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent.' " ' " (*Commission on State Mandates, supra*, 6 Cal.5th at p. 211.)  Proposition 115 poses a question that was addressed recently by our Supreme Court in *Commission on State Mandates*—what qualifies as undoing what the People have done in contravention of article II, section 10, subdivision (c) of the California Constitution "when the subject is a statutory provision whose reenactment was constitutionally compelled under article IV, section 9 of the Constitution." (*Commission on State Mandates, supra*, at p. 211.)  Our Supreme Court held that "[w]hen technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process.  This conclusion applies *unless* the provision is integral to accomplishing the electorate's goals in enacting the initiative or other indicia support the conclusion that voters reasonably intended to limit the Legislature's ability to amend that part of the statute." (*Id.* at p. 214.)

The District Attorney asserts that, in enacting Proposition 115, the electorate indicated an intent to limit the Legislature's ability to amend *any* portion of section 189 by providing that "[t]*he statutory provisions* contained in this measure may not be amended by the Legislature except by" a statute passed by two-thirds of each house or approved by the voters.  (Prop. 115, § 30, italics added.)  The District Attorney argues that by not using the more common phrase "[t]he provisions of this act shall not be amended by," the electorate indicated its intent to overcome the general rule that a mere technical restatement does not prevent legislative amendment.  Again, the parts of an amended statute that are copied without change are considered to have been part of the law all along and thus cannot be considered to be among the initiative's statutory

20

provisions. (See *Commission on State Mandates, supra*, 6 Cal.5th at pp. 209-210 ["Statutory provisions that are not actually reenacted and are instead considered to ' "have been the law all along" ' [citation] cannot fairly be said to be part of a ballot measure within the meaning of Government Code section 17556, subdivision (f)"].) Moreover, "[w]e do not import such meaning into the fact Proposition 115 states its 'statutory provisions' rather than its 'provisions' shall not be amended absent certain circumstances. To us, it appears to be a distinction without a difference." (*Cruz, supra*, 46 Cal.App.5th at pp. 760-761; see also *Gooden, supra*, 42 Cal.App.5th at p. 288, fn. 7.)

We find nothing to support the conclusion that voters would have "reasonably understood" they were restricting the Legislature's ability to amend murder liability as it subsequently did through Senate Bill 1437. (See *Commission on State Mandates*, *supra*, 6 Cal.5th at pp. 213-214 ["no indication appears in the text of the initiative, nor in the ballot pamphlet, to suggest voters would have reasonably understood they were restricting the Legislature from amending or modifying any of the duties set forth in the test claim statutes"].)

The preamble to Proposition 115 states the electorate's goals in enacting the initiative broadly: "to restore balance to our criminal justice system, to create a system in which justice is swift and fair, and to create a system in which violent criminals receive just punishment, in which crime victims and witnesses are treated with care and respect, and in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools." (Prop. 115, §1, subd. (c).) The District Attorney argues reducing those who can be found culpable of murder is at odds with the electorate's goals. We find no support for the suggestion that preserving all parameters for liability for murder was a specific goal of Proposition 115.

In the ballot materials, the Legislative Analyst set forth relevant background including the fact that, "[u]nder California law, the crime of first-degree murder is defined as one which is deliberate, or takes place during the commission of certain other

21

crimes, or involves torture or the use of poison or certain destructive devices." (Ballot Pamp., Prim. Elec. (June 5, 1990), analysis of Prop. 115 by Legis. Analyst, p. 32.) The voters were told the measure alters this rule in only one respect: It "[e]xpands the definition of first-degree murder to include murder committed during the commission or attempted commission of additional serious crimes." (*Ibid*.) Additionally, the voters were told the measure "[e]xpands the list of 'special circumstances' to include a variety of serious crimes, such as the killing of a witness to prevent his or her testimony in certain juvenile proceedings." (*Ibid*.) Senate Bill 1437 leaves intact these changes.

Again, the Legislature has acted in an area related, but distinct from the one addressed in Proposition 115. Section 189 still provides that a participant in a felony specified in subdivision (a) is liable for murder for a death during the perpetration or attempted perpetration of the offense, but subdivision (e) adds the additional requirements that one of the following must also be true: "(1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." While the final standard is the same as the standard for finding a special circumstance under section 190.2, subdivision (d) that was enacted in Proposition 115, a special circumstance may duplicate an element of first degree murder. (*Lowenfield v. Phelps* (1988) 484 U.S. 231, 246; *People v. Edelbacher* (1989) 47 Cal.3d 983, 1023, fn. 12.) Thus, contrary to the District Attorney's suggestion, we may not infer that by setting the special circumstances where it did, the electorate in enacting Proposition 115 said anything about where, at or below that level, the Legislature may set liability for murder. Nothing in Proposition 115 or its ballot materials indicate an intent to limit the ability of the Legislature to make the changes set forth in Senate Bill 1437.

We join the other courts that have addressed the issue in concluding Senate Bill 1437 is not an invalid attempt to amend Proposition 115 or Proposition 7.

### III.  DISPOSITION

The petitions for a writ of mandate and/or prohibition are denied.


/S/

_____

RENNER, J.


We concur:


/S/

_____

MAURO, Acting P. J.


/S/

_____

DUARTE, J.