Filed 4/23/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JESSICA M. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., <br><br> Respondents. | B343930 <br><br> (Los Angeles County Super. Ct. No. 24STCP02901) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.

Criminal Justice Legal Foundation and Kent S. Scheidegger for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Amanda J. Murray, Supervising Deputy Attorney General, and Jennifer L. Heinisch, Deputy Attorney General, for Respondents.

———————————————

In 2008 Sergio Linares pleaded no contest to rape and four other forcible sex offenses perpetrated against Jessica M. when he was 25 years old, and he admitted the allegation he used a knife in committing the crimes. Pursuant to a negotiated plea, the trial court sentenced Linares under Penal Code section 667.6, subdivision (c),[1] to an aggregate sentence of 50 years in state prison, comprising full, consecutive terms of eight years for each of the five sex offenses, plus 10 years for the weapon enhancement. In March 2023, at the beginning of the 15th year of his sentence, Linares received a youth offender parole hearing pursuant to section 3051, subdivision (b)(1). Jessica appeared at the hearing to oppose parole, and parole was denied. However, the California Board of Parole Hearings (Board) set a new parole suitability hearing.

Jessica and Crime Survivors, Inc., a nonprofit advocacy group supporting crime victims, contend section 3051 is unconstitutional as applied to forcible sex offenders sentenced under section 667.6's alternative sentencing scheme because section 3051 amended an initiative statute without a two-thirds vote of the Legislature or voter approval, in violation of Article II, section 10, subdivision (c), of the California Constitution. Specifically, they argue that Proposition 83 (the Sexual Predator Punishment and Control Act: Jessica's Law), approved by the voters in November 2006, amended section 667.6, subdivisions (c) and (d), which, respectively, authorize or mandate imposition of "full, separate, and consecutive term[s]" for enumerated sex offenses. Thus, they argue, section 3051, enacted in 2013, was

---

[1] Further undesignated statutory references are to the Penal Code.

2

unconstitutional as applied to youth offenders who committed forcible sex offenses because it provides parole hearings after only 15 years of incarceration, contravening Proposition 83's mandate of longer sentences for sex offenders.

In September 2024 Jessica and Crime Survivors filed a petition for writ of mandate seeking an order directing the Board and the California Department of Corrections and Rehabilitation (CDCR) to terminate Linares's youth offender parole proceeding and refrain from enforcing section 3051 as to any California prisoners who were sentenced to full, consecutive terms under section 667.6, subdivisions (c) or (d).[2]  The superior court assumed without deciding that Jessica had standing (but not Crime Survivors); however, the court denied the petition.

Jessica has standing because she has a beneficial interest in whether Linares is eligible for early parole under section 3051, in light of amendments to the California Constitution made by the Victims' Bill of Rights Act of 2008, commonly known as Marsy's Law.  (Cal. Const., art. I, § 28.)[3]

We conclude Proposition 83 did not make substantive changes to section 667.6, subdivisions (c) and (d).  Section 667.6 provided for imposition of full, consecutive sentences for

---

[2]     Although the writ petition named Linares as a real party in interest, Linares did not participate in the writ proceedings and is not a party to this appeal.

[3]     Because Jessica has standing, and "the significant legal issues before us are not affected by the standing issue," we do not address whether Crime Survivors also has standing to bring this action.  (*Strauss v. Horton* (2009) 46 Cal.4th 364, 399, fn. 6, abrogated on another ground by *Obergefell v. Hodges* (2015) 576 U.S. 644.)

enumerated forcible sex offenses from the time of its enactment in 1979.  In restating section 667.6, Proposition 83 moved the list of qualifying offenses set forth in subdivisions (c) and (d) to a new subdivision (e) and clarified and streamlined other language in subdivisions (c) and (d), but the only substantive changes were to expand the list of qualifying offenses set forth in subdivision (e). Further, we are not persuaded by Jessica and Crime Survivors' contention that restating section 667.6 was integral to the voters' goals in enacting Proposition 83, which, as expressed in the ballot materials, focused on implementing residency and other restrictions on convicted sex offenders in the community and increasing punishments for sexually violent predators and child molesters.  Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Linares's Offenses, Conviction, and Parole Hearing*[4]

At around 5:30 a.m. on July 26, 2008, Jessica, who was 23 years old at the time, was waiting alone at a bus stop in Los Angeles to commute to an early shift at work.  Linares, a stranger to Jessica, sat down next to her and raised a knife to her throat.  Linares forced her at knifepoint to walk to his vehicle and get into the passenger seat.  Linares, still brandishing the knife, drove to a secluded area, parked, and ordered Jessica to get into the back seat and undress.  Linares then forced Jessica to orally copulate him, and thereafter he digitally penetrated her vagina, raped her, sodomized her, orally copulated her, and then

---

[4]      Our summary of Linares's offenses and conviction is based on the allegations in Jessica and Crime Survivors' writ petition and the Los Angeles County District Attorney's February 23, 2023 section 1203.01 statement of view regarding parole.

4

robbed her. Linares was 25 years, eight months old at the time of the offenses.

Linares was charged with forcible rape (§ 261, subd. (a)(2)), forcible sodomy (§ 286, subd. (c)(2)), forcible digital penetration (§ 289, subd. (a)(1)), two counts of forcible oral copulation (§ 288a, subd. (c)(2)), and robbery (§ 211). For each of the five sex offenses, Linares was alleged to have committed a forcible sex offense under circumstances involving kidnapping and the use of a deadly weapon within the meaning of the one-strike law (§ 667.61), and it was alleged as to all six counts that Linares used a deadly weapon (§ 12022.3, subd. (a)).

Linares's potential maximum sentence was 136 years to life in state prison. However, he entered into a negotiated plea under which he pleaded guilty to the five forcible sex offenses and admitted the allegation he used a knife in committing the offenses (but not the allegation under section 667.61), and he was sentenced to the full upper term of eight years on each count, to run consecutively pursuant to section 667.6, subdivision (c), plus 10 years for the deadly weapon enhancement, for an aggregate sentence of 50 years in prison.

Linares qualified for and received a youth offender parole hearing on March 29, 2023, when he was serving the 15th year of his sentence. Jessica asserted her right to attend the hearing and provided a victim impact statement. The Los Angeles County District Attorney, in his section 1203.01 statement of view for the hearing, described the offenses and impact on Jessica, and he explained the reason for the negotiated plea: "Facing overwhelming evidence of guilt, [Linares] sought the benefit of a determinate term. The People agreed to a plea prior to preliminary hearing for a substantial sentence to ensure public

safety, and to prevent [Jessica] from having to endure periodic parole hearings in the future." The Board denied parole for three years, although it later advanced Linares's next eligibility hearing.

On June 29, 2024 the Board notified Jessica that a parole eligibility hearing had been scheduled for October 2. On September 10 Jessica and Crime Survivors filed their writ petition, and on September 26 they applied for a temporary restraining order to enjoin the hearing, which the superior court denied. At the October 2 parole eligibility hearing, however, Linares stipulated that he would be unsuitable for parole for another three years.

B.    *The Petition*

In their verified writ petition, Jessica and Crime Survivors requested a writ of mandate (Code Civ. Proc., § 1085) (or in the alternative a writ of prohibition (*id.*, § 1103)) directing the Board and CDCR to cancel Linares's pending parole hearing, barring any further parole hearings for Linares, and barring Linares's release prior to completion of the full, consecutive terms of his sentence. They further sought orders "forbidding statewide any parole hearing for or releases of inmates sentenced to full, separate and consecutive terms under subdivisions (c) or (d) of section 667.6 . . . earlier than the completion of sentences as authorized by those provisions; and . . . forbidding release of any prisoners illegally granted parole as described above."

The petition alleged the bills enacting and amending section 3051 were void to the extent they conflicted with section 667.6, subdivisions (c) and (d), as enacted by Proposition 83, because the bills were not passed by a vote of two-thirds of both the Senate and Assembly as required under

6

Proposition 83 and the California Constitution. Consequently, as alleged, the Board's "decision[s] to schedule a parole suitability hearing for [Linares] and other similarly situated prisoners sentenced [under section] 667.6 are void." Jessica and Crime Survivors alleged they had a beneficial interest in the proceedings. CDCR and the Board in their answer disputed the petition's claims and asserted that Jessica and Crime Survivors did not have standing to demand that Linares (or any incarcerated person) be denied a youth offender parole hearing under section 3051.[5]

Jessica submitted a declaration attesting to the injuries she suffered and continued to suffer as a result of Linares's parole proceedings, describing how the proceedings caused her trauma to resurface and undermined assurances she received at the time of Linares's sentencing that he would serve 50 years. Patricia Wenskunas, the founder and chief executive officer of Crime Survivors, submitted a declaration in which she attested that Crime Survivors was a nonprofit California corporation that provided advocacy and support for victims of crime, including "services to victims who oppose parole for the perpetrators of the crimes against them."

---

[5] CDCR and the Board also alleged that because Linares had stipulated to a three-year postponement of parole eligibility, the case was not ripe as to a future youth offender parole hearing, and it was moot as to the October 2, 2024 hearing. They do not raise these contentions on appeal, and we conclude the issues on appeal are justiciable because the same issues raised in this appeal will be at issue with respect to future youth offender parole hearings for Linares.

7

After hearing argument of counsel, the superior court on December 16, 2024 issued a 15-page order denying the petition. In its order, the court assumed without deciding that Jessica had standing to challenge Linares's parole proceedings, and her challenge was ripe. However, it found that Crime Survivors did not have standing. The court found Proposition 83 did not substantively amend section 667.6, subdivision (c).[6]

On January 21, 2025 the superior court entered a judgment denying the petition. Jessica and Crime Survivors timely appealed.

## DISCUSSION

A. *Statutory Framework*

    1.    *Consecutive sentencing under section 667.6*

In 1976, as part of the Uniform Determinate Sentencing Act (Stats. 1976, ch. 1139, p. 5061 et seq.), the Legislature enacted section 1170.1, which "governs the calculation and imposition of a determinate sentence when a defendant has been convicted of more than one felony offense." (*People v. Williams* (2004) 34 Cal.4th 397, 402; accord, *People v. Sasser* (2015) 61 Cal.4th 1, 8-9.) Under section 1170.1, subdivision (a), the sentencing court designates one of the offenses as a principal term and imposes on that offense the "greatest term of imprisonment"; sentences on consecutive terms for other offenses (the subordinate terms) are limited to one-third of the middle

---

[6] The superior court did not address whether the changes made by Proposition 83 to section 667.6, subdivision (d), constituted substantive amendments.

term provided for those offenses. (*Williams*, at p. 402; see *Sasser*, at p. 9.)

The Legislature enacted section 667.6 in 1979 to create an alternative sentencing scheme that provides longer sentences for defendants convicted of specified forcible sex offenses. (*People v. Sasser, supra*, 61 Cal.4th at p. 9; see Stats. 1979, ch. 944, § 10, p. 3258.) As relevant here, section 667.6, subdivision (c), authorizes the trial court to impose a "full, separate, and consecutive term" for each conviction for an enumerated sex offense, and subdivision (d) requires imposition of a full, separate, and consecutive term if the offenses "involve separate victims or involve the same victim on separate occasions."[7]

Prior to September 19, 2006 (two months before enactment of Proposition 83),[8] section 667.6, subdivision (c), stated, as relevant here: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of [enumerated sex offenses] whether or not the crimes were committed during a single transaction. If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have

---

[7] Section 667.6, subdivisions (a) and (b), also part of the statute's original enactment, direct the sentencing court to impose a five-year sentence enhancement for repeat sex offenders (§ 667.6, subd. (a)) and a 10-year enhancement for offenders who served two or more prior prison terms for enumerated sex offenses (*id.*, subd. (b)).

[8] As we will discuss, section 667.6 was amended, effective September 20, 2006, prior to enactment of Proposition 83.

9

been released from imprisonment."  (See Stats. 2002, ch. 787, § 16.)

The enumerated sex offenses in section 667.6, subdivision (c), included section 261, subdivision (a)(2), (3), (6), and (7) (rape by force, incapacitation, threat of retaliation, or threat of arrest); section 262, subdivision (a)(1), (4), and (5) (spousal rape); section 264.1 (rape or sexual penetration in concert with another); section 286, subdivision (k) (sodomy by public official against victim's will); section 288, subdivision (b) (forcible lewd acts on a child or by a caretaker on a dependent adult); section 288a, subdivision (k) (oral copulation by public official against victim's will); section 288.5 (continuous sexual abuse of a child); section 289, subdivision (a) (forcible sexual penetration); and sodomy or oral copulation in violation of section 286 or 288a "by force, violence, duress, menace, or fear of immediate and unlawful bodily injury."  The enumerated offenses also included violation of section 220 (assault with intent to commit specified sex offenses) but excluded assault with intent to commit mayhem and limited qualifying assaults (with one exception) to those where the offender had a prior conviction of section 220.  (See Stats. 2002, ch. 787, § 16.)

Prior to September 19, 2006, section 667.6, subdivision (d), provided in relevant part:  "A full, separate, and consecutive term shall be served for each violation [of enumerated sex offenses] if the crimes involve separate victims or involve the same victim on separate occasions."  (See Stats. 2002, ch. 787, § 16.)  The enumerated sex offenses under section 667.6, subdivision (d),

10

included all offenses listed in subdivision (c), except for continuous sexual abuse of a child under section 288.5.[9]

###### 2.  *Proposition 83*

Proposition 83, approved by the voters in the general election on November 7, 2006, was a "'wide-ranging initiative intended to "help Californians better protect themselves, their children, and their communities" [citation] from problems posed by sex offenders by "strengthen[ing] and improv[ing] the laws that punish and control sexual offenders."'" (*In re Taylor* (2015) 60 Cal.4th 1019, 1022, quoting Prop. 83, §§ 2(f), 31; accord, *In re E.J.* (2010) 47 Cal.4th 1258, 1263.)  The proposition was named "Jessica's Law" after Jessica Lunsford, a nine-year-old Florida girl who was "kidnapped, assaulted, and buried alive by a convicted sex offender who had failed to report where he lived." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) (Voter Information Guide), Arguments in Favor of Prop. 83, p. 46.)

In the Official Title and Summary printed in the Voter Information Guide, the Attorney General stated Proposition 83 "increases penalties for violent and habitual sex offenders and child molesters"; "prohibits registered sex offenders from residing within 2,000 feet of any school or park"; "requires lifetime Global

---

[9]    Effective January 1, 1990, Assembly Bill No. 2212 (1989-1990 Reg. Sess.) added the offense of continuous sexual abuse of a child under section 288.5 to the Penal Code and amended section 667.6, subdivision (c), to include section 288.5 in the list of enumerated sex offenses.  (Stats. 1989, ch. 1402, §§ 4, 7.)  The legislation did not add section 288.5 to the list of enumerated offenses in subdivision (d), an omission that is not explained in the legislative history.

Positioning System [GPS] monitoring of felony registered sex offenders"; "expands the definition of sexually violent predator"; and "changes current two-year involuntary civil commitment for a sexually violent predator to an indeterminate commitment . . . ."  (Voter Information Guide, Official Title and Summary, p. 42, capitalization omitted.)

The Legislative Analyst, in turn, stated in the Voter Information Guide that the proposition "[i]ncrease[s] penalties for [s]ex [o]ffenses" in five respects: it "broadens the definition of certain sex offenses"; "provides for longer penalties for specified sex offenses," for example, "expand[ing] the list of crimes that qualify for life sentences in prison"; "prohibits probation in lieu of prison for some sex offenses"; "eliminates early release credits for some inmates convicted of certain sex offenses (for example, habitual sex offenders who have multiple convictions for felony offenses such as rape)"; and "extends parole for specified sex offenders, including habitual sex offenders."  (Voter Information Guide, Analysis by the Legislative Analyst, p. 43, boldface and italics omitted.)

As a whole, Proposition 83 made changes to more than two dozen existing statutes, including Penal Code sections 209, 220, 264.1, 269, 290.3, 311.11, 667.5, 667.51, 667.6, 667.61, 667.71, 1203.06, 1203.065, 1203.075, 3000, 3001, 3003, 3003.5, 3004, 12022.75, and Welfare and Institutions Code sections 6600, 6600.1, 6601, 6604, 6604.1, 6605, and 6608.  (Prop. 83, §§ 3-5, 7-17, 19-30.)  The proposition also added two sections to the Penal Code: section 288.3 (a new offense of communicating with a minor with the intent to commit a sex offense) and section 3000.07 (mandatory GPS monitoring during parole).  (Prop. 83, §§ 6, 18.)

Proposition 83's most prominent change to section 667.6 was its removal of the list of qualifying forcible sex offenses found in each of subdivisions (a), (c), and (d), and its placement of the qualifying offenses into a new subdivision (e), which was then incorporated by reference into the existing provisions.[10]  (Prop. 83, § 11.)  The list of qualifying offenses was also expanded to include in subdivision (e)(8) the offense of sexual penetration in violation of section 289, subdivision (g) (sexual penetration under threat by public official to incarcerate, arrest, or deport), and in subdivision (e)(9) an expanded category of assaults with intent to commit a specified sexual offense in violation of section 220. Specifically, subdivision (e)(9) added assault with the intent to commit mayhem as a qualifying assault, and it removed the requirement that an offender previously have been convicted of a section 220 offense.  (Prop. 83, § 11.)

As indicated in the Voter Information Guide with italicization and strikethrough text, Proposition 83 modified section 667.6, subdivision (c), as follows:

> "In lieu of the term provided in section 1170.1, a full, separate and consecutive term may be imposed for each violation of ~~violation of Section 220, other than an assault~~

_____

[10]   Section 667.6, former subdivision (e), authorizing counties to receive a percentage of collections of victim assistance fines, was renumbered as subdivision (f).  Language in section 667.6, subdivisions (a) and (b), authorizing imposition of victim assistance fines, was also moved into subdivision (f).  (Prop. 83, § 11.)  The enhancements in subdivisions (a) and (b) for prior convictions were expanded by removing the requirement that a qualifying prior conviction have been committed within the past 10 years, and subdivision (e)(10) was added to include analogous offenses in other jurisdictions as qualifying offenses.

with intent to commit mayhem, provided that the person has been convicted previously of violating Section 220 for an offense other than an assault with intent to commit mayhem, paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261, paragraph (1), (4), or (5) of subdivision (a) of Section 262, Section 264.1, subdivision (b) of Section 288, Section 288.5 or subdivision (a) of Section 289, of committing sodomy in violation of subdivision (k) of Section 286, of committing oral copulation in violation of subdivision (k) of Section 288a, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person [list of offenses] whether or not the crimes were committed during a single transaction *an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e).* If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison."

(Prop. 83, § 11.)

Similarly, the first paragraph of section 667.6, subdivision (d), was modified as follows:

"A full, separate, and consecutive term shall be ~~served~~ *imposed* for each violation of ~~Section 220, other than an assault with intent to commit mayhem, provided that the person has been convicted previously of violating Section 220 for an offense other than an assault with intent to commit mayhem, paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261, paragraph (1), (4), or (5) of subdivision (a) of Section 262, Section 264.1, subdivision (b) of Section 288, Section 288.5 or subdivision (a) of Section 289, of committing sodomy in violation of subdivision (k) of Section 286, of committing oral copulation in violation of subdivision (k) of Section 288a, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person [list of offenses] whether or not the crimes were committed during a single transaction [enumerated offenses]~~ *an offense specified in subdivision (e)* if the crimes involve separate victims or involve the same victim on separate occasions."

(Prop. 83, § 11.) The remaining paragraphs in subdivision (d) were unchanged. (*Ibid.*)

Finally, Proposition 83 included an amendment clause stating, "The provisions of this act shall not be amended by the Legislature except by a statute passed in each house by rollcall vote and entered in the journal, two-thirds of the membership of each house concurring, or by a statute that becomes effective when approved by the voters. However, the Legislature may

15

amend the provisions of this act to expand the scope of their application or to increase the punishments or penalties provided herein by a statute passed by a majority vote of each house thereof." (Prop. 83, § 33.)

          3.     *Senate Bill No. 1128*

At the same time the campaign to enact Proposition 83 proceeded, the Legislature considered similar, wide-ranging changes to the law governing sex offenses proposed by Senate Bill No. 1128 (2005-2006 Reg. Sess.), the Sex Offender Punishment, Control, and Containment Act of 2006 (Senate Bill 1128), which was first introduced on January 9, 2006. (See *People v. Castillo* (2010) 49 Cal.4th 145, 149.) As the Supreme Court explained in *Castillo*, "Even before Proposition 83 officially qualified for the ballot [in April 2006], but in light of that impending initiative measure, [Senate Bill 1128] was introduced in the Legislature as urgency legislation—meaning that if passed by both houses of the Legislature by a two-thirds vote, it would become effective upon signature of the Governor, prior to the November election." (*Ibid*.) The Legislature passed Senate Bill 1128, and the Governor signed it as urgency legislation, effective September 20, 2006. (*Ibid*.)

Senate Bill 1128 made virtually identical changes to section 667.6 as those made by Proposition 83. (Compare Stats. 1993, ch. 127, § 32 with Prop. 83, § 33.) Although Senate Bill 1128 became effective 48 days before the voters enacted Proposition 83, the Voter Information Guide for the November 2006 general election was issued on August 14, prior to the bill's enactment. Consequently, the ballot materials available to the voters described Proposition 83's changes to the

16

Penal and Welfare and Institutions Codes (and presented the changes in redlined format) using the versions of the code sections in place prior to Senate Bill 1128's amendments.

4. *Youth offender parole under section 3051*

In *Graham v. Florida* (2010) 560 U.S. 48, 74, the United States Supreme Court, emphasizing juvenile offenders' "capacity for change and limited moral culpability," held that imposition of a sentence of life without parole on a juvenile offender who did not commit homicide violated the Eighth Amendment's prohibition of cruel and unusual punishment. Two years later, in *Miller v. Alabama* (2012) 567 U.S. 460, 477, the court extended this holding to the imposition of a mandatory sentence of life without parole on a juvenile convicted of murder because the mandatory penalty "precludes consideration of [the juvenile's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." Shortly after *Miller* was decided, the California Supreme Court held in *People v. Caballero* (2012) 55 Cal.4th 262, 267-268 that the Eighth Amendment analysis in *Graham* also applied to sentences that are the "functional equivalent of a life without parole sentence."

"To bring juvenile sentencing in California into conformity with *Graham*, *Miller* and *Caballero*, the Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.) . . . , effective January 1, 2014, adding sections 3051 and 4801, subdivision (c), to the Penal Code." (*People v. Ochoa* (2020) 53 Cal.App.5th 841, 848; see *People v Caballero, supra*, 55 Cal.4th at p. 269, fn. 5 ["We urge the Legislature to enact legislation establishing a parole eligibility mechanism."].) Under section 3051, the Board is

17

required to conduct a youth offender parole hearing for eligible youth offenders after they have been incarcerated for 15, 20, or 25 years, depending on the term of the "controlling offense." (§ 3051, subds. (a) & (b).)  As relevant here, section 3051, subdivision (b)(1), now provides, "A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a determinate sentence shall be eligible for release on parole at a youth offender parole hearing during the person's 15th year of incarceration."

The Legislature has amended section 3051 several times, expanding eligibility for youth offender parole.  (See Stats. 2015, ch. 471, § 1, eff. Jan. 1, 2016 (Sen. Bill 261); Stats. 2017, ch. 675, § 1, eff. Jan. 1, 2018 (Assem. Bill 1308); Stats. 2017, ch. 684, § 1.5, eff. Jan. 1, 2018 (Sen. Bill 394); Stats. 2019, ch. 577, § 2, eff. Jan. 1, 2020 (Assem. Bill 965).)  It is undisputed that neither Senate Bill No. 260 nor any of the bills amending section 3051 were passed by a vote of two-thirds of both the Senate and Assembly.

B.      *Writ Relief and Standard of Review*

"A writ of mandate 'may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . .'" (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916, quoting Code Civ. Proc., § 1085, subd. (a).)  To prevail, a petitioner must show a ""a clear, present . . . ministerial duty on the part of the respondent"' . . . [and] a correlative "'clear, present and beneficial right in the petitioner to the performance of that duty.'"" (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340; accord,

*Hayes v. Temecula Valley Unified School Dist.* (2018)
21 Cal.App.5th 735, 746.)  A writ of mandate is "appropriate for
challenging the constitutionality or validity of statutes or official
acts." (*Wenke v. Hitchcock* (1972) 6 Cal.3d 746, 751; accord,
*Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 305.)

Unless the law provides otherwise, the petitioner bears the
burden of proof in a mandate proceeding under Code of Civil
Procedure section 1085.  (*American Coatings Assn. v. South Coast
Air Quality Management Dist.* (2012) 54 Cal.4th 446, 460; accord,
*City of Marina v. County of Monterey* (2023) 97 Cal.App.5th 17.)
"In reviewing a judgment granting or denying a writ of mandate
petition, . . . [o]n questions of law, including statutory
interpretation, the appellate court applies a de novo review and
makes its own independent determination." (*Hayes v. Temecula
Valley Unified School Dist., supra*, 21 Cal.App.5th at p. 746;
accord, *Boyd v. Central Coast Community Energy* (2023)
96 Cal.App.5th 136, 142.)  "However, in reviewing the record, we
do not reweigh the evidence.  Instead, we presume that the
superior court's findings of fact are correct and review those
findings for substantial evidence, crediting the evidence
supporting the prevailing party and drawing all reasonable
inferences in that party's favor." (*Boyd*, at p. 142; accord,
*McGroarty v. Los Angeles Unified School Dist.* (2021)
61 Cal.App.5th 258, 266 ["[i]n reviewing the trial court's ruling on
a petition for a writ of mandate, we 'defer[] to a trial court's
factual determinations if supported by substantial evidence'"].)

C. *Jessica Has Standing To Challenge the Constitutionality of Section 3051 as Applied to Forcible Sex Offenders Sentenced Under Section 667.6, Subdivision (c)*

"As a general rule, a party must be 'beneficially interested' to seek a writ of mandate." (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 (*Save the Plastic Bag*); accord, Code Civ. Proc., § 1086 [writ may issue "upon the verified petition of the party beneficially interested"].) "'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.'" (*Save the Plastic Bag*, at p. 165; accord, *Synergy Project Management, Inc. v. City and County of San Francisco* (2019) 33 Cal.App.5th 21, 30-31 [contractor on project had beneficial interest in determination whether awarding authority had right under state law to determine whether subcontractor should be replaced].) The beneficial interest requirement "is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."'" (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362 (*Associated Builders*); accord, *Save the Plastic Bag*, at p. 165.)

Jessica has a beneficial interest in Linares's parole proceedings pursuant to amendments to article 1, section 28 of the California Constitution made by the Victims' Bill of Rights Act of 2008 (Marsy's Law). Marsy's Law, adopted by voter

20

initiative, "broadly mandates notice to victims and an opportunity to be heard at 'parole or other post-conviction release proceedings' before prisoners obtain early release from prison." (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 404, citing Cal. Const., art. I, § 28, subd. (b)(7); see Cal. Const., art. I, § 28, subd. (b)(15) [crime victims are entitled "[t]o be informed of all parole procedures, to participate in the parole process, to provide information to the parole authority to be considered before the parole of the offender, and to be notified, upon request, of the parole or other release of the offender"].) Marsy's Law also amended the parole statutes "to limit the frequency of parole applications and require the [Board] to consider victims' views and interests in making parole decisions (§ 3041.5), . . . and to make the parole board responsible for protecting victims' rights in the parole process (§ 3044)." (*Santos*, at p. 413.)

Further, the preamble to Marsy's law recognizes that crime victims have a "collectively shared right to expect that persons convicted of committing criminal acts are sufficiently punished in both the manner and the length of the sentences imposed by the courts . . . . This right includes the right to expect that the punitive and deterrent effect of custodial sentences imposed by the courts will not be undercut or diminished by the granting of rights and privileges to prisoners that are not required [by law]." (Cal. Const., art. I, § 28, subd. (a)(5)). The preamble also acknowledges that "frequent and difficult parole hearings that threaten to release criminal offenders, and the ongoing threat that the sentences of criminal wrongdoers will be reduced, prolong the suffering of crime victims for many years after the crimes themselves have been perpetrated." (*Id.*, subd. (a)(6).)

Jessica submitted a victim impact statement and appeared at Linares's first parole hearing in March 2023.  As she attested in her declaration, appearing at Linares's parole hearing was traumatizing and undermined the assurances she was given at sentencing that Linares would serve a lengthy prison sentence without the prospect of an early release.  These are interests unique to a crime victim that are not held by the general public.[11]

D.     *The Superior Court Did Not Err in Denying the Petition*
    1.     *Law governing amendments to initiative statutes*
The California Constitution provides in article II, section 10, subdivision (c), that "[t]he Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval."  Thus, "'[t]he Legislature may *not* amend an initiative statute without subsequent voter approval unless the initiative permits such amendment, "and then only upon whatever conditions the voters attached to the Legislature's amendatory powers."'"  (*People v. Rojas* (2023) 15 Cal.5th 561, 568, italics added; accord, *People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 568.)  "The evident purpose of limiting the Legislature's power to amend an initiative statute "'is to 'protect the people's initiative powers by precluding the Legislature from

---

[11]     Because we reject Jessica's challenge to the constitutionality of section 3051 with respect to Linares's youth offender parole hearing, we do not address her request to enjoin application of section 3051 with respect to all youth offenders in custody who, like Linares, were sentenced for forcible sex offenses under section 667.6, subdivision (c).

undoing what the people have done, without the electorate's consent."'"" (*County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 211 (*San Diego*); accord, *People v. Superior Court (Ferraro)* (2020) 51 Cal.App.5th 896, 908.) Proposition 83's amendment clause requires a two-thirds vote of both the Senate and Assembly to amend or repeal the "provisions of this act" (except for legislation that increases punishment). (Prop. 83, § 33.)

In considering whether the Legislature has unconstitutionally amended an initiative statute, this inquiry invariably implicates another provision of the California Constitution—article IV, section 9, which states "[a] section of a statute may not be amended unless the section is re-enacted as amended." As a result of this provision, "a substantial part of almost any statutory initiative will include a restatement of existing provisions with only minor, nonsubstantive changes—or no changes at all." (*San Diego, supra*, 6 Cal.5th at p. 208; accord, *People v. Superior Court of San Diego County (Gooden)* (2019) 42 Cal.App.5th 270, 288.) "The rationale for compelling reenactment of an entire statutory section when only a part is being amended is to avoid "'the enactment of statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect'" and the risk that "'the public, from the difficulty of making the necessary examination and comparison, failed to become appr[]ised of the changes made in the laws.'"" (*San Diego*, at p. 208.)

23

The Supreme Court in *San Diego* recognized the absurd consequences that would result if the Legislature's mere restatement of a provision in an initiative stripped the Legislature of authority to amend the initiative statute, even if the restatement was only "to renumber the section, correct punctuation or grammar errors, or substitute gender-neutral language." (*San Diego, supra*, 6 Cal.5th at p. 210.) The court rejected this broad interpretation of a prohibited amendment, reasoning it would be more prudent "to assign somewhat more limited scope to the state constitutional prohibition on legislative amendment of an initiative statute." (*Id*. at p. 214.) The court articulated the following rule: "When technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process. This conclusion applies *unless* the provision is integral to accomplishing the electorate's goals in enacting the initiative or other indicia support the conclusion that voters reasonably intended to limit the Legislature's ability to amend that part of the statute." (*Ibid.* [holding Prop. 83's restatement of Welf. & Inst. Code, §§ 6601-6605 to incorporate the initiative's expanded definition of a sexually violent predator contained only technical restatements of provisions governing state reimbursement of local administration costs]; accord, *People v. Nash* (2020) 52 Cal.App.5th 1041, 1064-1065 [Prop. 7's amendments to the Penal Code to increase sentences for murder contained only technical restatement of elements of first and second degree murder; therefore, Sen. Bill No. 1437's change in the definition of murder was not unconstitutional amendment].)

### 2. *Proposition 83's changes to section 667.6, subdivisions (c) and (d), were not substantive*

Jessica and Crime Survivors contend Proposition 83 made substantive changes to section 667.6, subdivisions (c) and (d), thereby barring the Legislature's addition of section 3051 to shorten the "full, separate, and consecutive" sentences required for sex offenders under section 667.6 by providing youth offender parole after 15 years. Proposition 83 did not make substantive changes to subdivision (c) or (d).[12]

As discussed, Proposition 83 made three changes to section 667.6, subdivision (c), as the law existed in mid-2006, which were illustrated in the Voter Information Guide with italicization and strikethrough text.[13] First, the enumeration of

---

[12] The superior court did not address section 667.6, subdivision (d), because Linares was sentenced under subdivision (c), for offenses against a single victim on a single occasion. However, the petition alleged Proposition 83 made the same changes to subdivisions (c) and (d) that created the constitutional infirmity in section 3051. We therefore address the sections together, as do the parties.

[13] On appeal, the Attorney General argues Proposition 83 effected only a technical restatement of section 667.6 because it did not make any changes (except for one typographical correction) to any provision of the statute as amended by Senate Bill 1128 seven weeks before the voters approved Proposition 83 (effective September 20, 2006). However, the Attorney General concedes the Board and CDCR did not raise Senate Bill 1128 in the superior court (and the court did not consider the bill in ruling on the petition), arguably forfeiting this contention. Moreover, the Voter Information Guide addressed section 667.6 as it existed prior to enactment of the changes in Senate Bill 1128 (and the redlined delineation of Proposition 83's changes was

25

qualifying forcible sex offenses was removed from subdivision (c) and replaced with the language "any offense specified in subdivision (e)" (with the list of qualifying offenses moved to subdivision (e)); second, the phrase "whether or not the crimes were committed during a single transaction" was replaced with the phrase "if the crimes involve the same victim on the same occasion"; and third, the language "[a] term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e)" was added. As the superior court emphasized, the central provision of subdivision (c), i.e., its authorization of a "full, separate, and consecutive term" in lieu of a determinate term under section 1170.1, was not changed.

Section 667.6, subdivision (d), was changed in only two respects. First, similar to subdivision (c), the enumeration of forcible sex offenses was removed and replaced with a reference to subdivision (e). Second, the word "served" was replaced with the word "imposed" in the sentence "[a] full separate, and consecutive term shall be ~~served~~ *imposed* for each violation [of specified offenses] if the crimes involve separate victims or involve the same victim on separate occasions."[14] Not

_____

made using the prior version of section 667.6). Accordingly, the voters were only apprised of the prior version of section 667.6 and proposed changes to that version, which is relevant to the voters' intent in passing Proposition 83. We therefore focus on the nature of the amendments to section 667.6 as outlined in the Voter Information Guide and do not reach whether the amendments made by Senate Bill 1128 removed any constitutional infirmity.

[14] We note that this language conformed section 667.6, subdivision (d), with subdivision (c), which provided before

26

surprisingly, Jessica and Crime Survivors do not argue this was a substantive change.

Jessica and Crime Survivors also do not challenge the fact Proposition 83 modified section 667.6, subdivisions (c) and (d), to move the lengthy enumeration of offenses that was formerly set forth in subdivisions (a), (c), and (d), into a single new provision (e). However, they argue Proposition 83 made substantive changes to subdivisions (c) and (d) by expanding the scope of qualifying offenses listed in subdivision (e). First, the proposition added sexual penetration under threat by public official to incarcerate, arrest, or deport (§ 289, subd. (g)) as a qualifying offense under section 667.6, subdivision (e)(8). Second, it expanded the scope of the qualifying offense of assault with intent to commit a sex crime (§ 220) by eliminating the requirement of a prior conviction (see § 667.6, subd. (e)(9)). In addition, subdivision (e)(6) included the offense of continuous sexual abuse of a child (§ 288.5), which previously was enumerated in subdivision (c), but not in subdivision (d).

Although Proposition 83 applied the existing sentencing scheme for forcible sex offenders to additional offenses—which appears to be the reason Proposition 83 restated section 667.6—these are not substantive changes to the sentencing scheme created by subdivisions (c) and (d). That is, for every forcible sex offense covered by the pre-Proposition 83 version of section 667.6, Proposition 83 did not change the standard for whether a trial court is *authorized* to impose a consecutive full-term sentence (subdivision (c)) or *mandated* to impose a consecutive full-term

Proposition 83 that a full, separate, and consecutive term "may be imposed for each violation."

27

sentence (subdivision (d)). Because the expansion of the scope of the sentencing scheme to include additional offenses was not a substantive change to the statutory requirements for sentencing sex offenders, there was no constitutional prohibition on further changes to the sentencing scheme. (See *People v. Bucio* (2020) 48 Cal.App.5th 300, 311-312 [Prop. 115's amendment to section 189 to expand the scope of first degree felony-murder liability by adding five qualifying felonies to list of predicate offenses did not make a substantive change to the elements of murder, and thus, the Legislature was not constitutionally prohibited from later modifying the elements of felony-murder by enacting former § 1170.95]; see also *People v. Nash, supra*, 52 Cal.App.5th at pp. 1068-1069 [same].)[15]

Turning to the second change to section 667.6, subdivision (c), at first blush the replacement of the phrase "whether or not the crimes were committed during a single transaction" (to describe when a full, consecutive sentence "may" be imposed) with the phrase "if the crimes involve the same victim on the same occasion" appears substantive. It is not. From its inception to the present, section 667.6, subdivision (d), has *mandated* full, consecutive terms "if the crimes involve separate victims or involve the same victim on separate

---

[15] We do not reach (and Jessica and Crime Survivors do not request we reach) whether enactment of section 3051 constituted an unconstitutional amendment of (1) section 667.6, subdivisions (c) and (d), as applied to defendants convicted of a forcible sex offense set forth in section 667.6, subdivision (e)(8) or (e)(9), that was not a qualifying offense prior to enactment of Proposition 83, or (2) section 667.6, subdivision (d), as applied to defendants convicted of continuous sexual abuse of a child pursuant to section 667.6, subdivision (e)(6).

28

occasions." Thus, subdivision (c)'s earlier formulation *authorizing* full, consecutive terms "whether or not the crimes were committed during a single transaction" was confusing because subdivision (d) already mandated a full, consecutive sentence if there were two victims or sex offenses committed on two occasions. In practice, therefore, prior to Proposition 83, the permissive imposition of a full, consecutive sentence under subdivision (c) would only have had meaning where there was a single sex offense against a single victim on a single occasion— the language clarified by Proposition 83. Because Proposition 83 did not change the scope of sex offenders who were subject to permissive or mandatory full, consecutive sentences, the change in language was not substantive.

Finally, the addition of the sentence, "[a] term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e)," did not substantively change the requirements for imposition of a full, consecutive sentence under section 667.6, subdivision (c). Jessica and Crime Survivors point out that for nearly a decade after section 667.6, subdivision (c), was enacted, the Courts of Appeal were divided over whether a defendant who committed a single enumerated sex offense (in addition to another determinate-sentence crime) could be sentenced to a full consecutive term, or whether the defendant had to be convicted of more than one enumerated sex offense. (See *People v. Jones* (1988) 46 Cal.3d 585, 592, fn. 4 [collecting decisions].) But the Supreme Court resolved the split in *Jones*, holding "subdivision (c) vests the sentencing court with discretionary authority to impose a full, consecutive term for any [enumerated sex offense] conviction, even when the defendant stands convicted

29

of only one [enumerated sex offense]." (*Id.* at p. 600.)  Jessica and Crime Survivors concede in light of *Jones* that the sentence added by Proposition 83 did not change the law, but they argue the change was substantive because it "prevents the Supreme Court from overruling *Jones* and accepting the alternate interpretation."  In the absence of any evidence that Proposition 83 was drafted or understood by the voters to prevent the Supreme Court from reversing a two-decade-old precedent, we conclude the additional language was not a substantive change, but rather, a clarification to conform to settled law.

>3.     *Jessica and Crime Survivors have not shown*
>       *section 667.6 was integral to the goals of*
>       *Proposition 83*

As discussed, under *San Diego, supra*, 6 Cal.5th at page 214, the Legislature can amend a provision addressed by an initiative statute that is only a technical restatement "*unless* the provision is integral to accomplishing the electorate's goals in enacting the initiative or other indicia support the conclusion that voters reasonably intended to limit the Legislature's ability to amend that part of the statute."  Jessica and Crime Survivors argue that even if Proposition 83 provided only a technical restatement of section 667.6, subdivisions (c) and (d), both *San Diego* exceptions are met.  This argument fails because Jessica and Crime Survivors have not met their burden to present evidence Proposition 83's changes to section 667.6 were "integral" to the voters' goals in approving the initiative or that the voters

30

reasonably intended to remove section 667.6, subdivisions (c) and (d), from the Legislature's purview.[16]

Jessica and Crime Survivors point to a finding in Proposition 83 that "[e]xisting laws that punish aggravated sexual assaults, habitual sexual offenders and child molesters must be strengthened and improved" (Prop. 83, § 2(h)), which, they argue, shows the proposition is "squarely contrary to any watering down of section 667.6(c)." But the fact Proposition 83 was intended, among other things, to increase punishment for aggravated sexual assaults[17] does not show that restatement of section 667.6's existing sentencing scheme was integral to the initiative. Indeed, the narrowness of the substantive changes to section 667.6 as a whole—adding two forcible sex offenses and section 288.5 to the list of qualifying offenses (the latter with respect to subdivision (d))—shows it was not. Moreover, section 667.61 (the one strike law) enhances sentences for aggravated sex offenses, not section 667.6, which provides an alternative sentencing scheme for forcible sex offenses. And, as discussed, substantial portions of the initiative were directed at controlling and monitoring sex offenders while not in custody and expanding the definition of sexually violent predators and their period of

---

[16] Jessica and Crime Survivors, as the petitioners, had the burden to prove the Board and CDCR had a mandatory duty not to act in contravention of Proposition 83. (*American Coatings Assn. v. South Coast Air Quality Management Dist., supra*, 54 Cal.4th at p. 460.)

[17] Jessica does not contend that section 667.6, subdivisions (c) and (d), affect sentences for habitual sexual offenders and child molesters.

31

commitment.  (See Voter Information Guide, Official Title and Summary, at p. 42.)

The Legislative Analyst identified five ways in which Proposition 83 "increases the penalties for specified sex offenses." (See Voter Information Guide, Analysis by the Legislative Analyst, at p. 43.)  Three of these changes (limits on probation, elimination of early release credits, and extending parole) (see *ibid*.) have nothing to do with sentencing for forcible sex offenses under section 667.6.  The change described as "broaden[ing] the definition of certain sex offenses" focuses on the expanded definition of aggravated sexual assault of a child in section 269, subdivision (a), to include offenders who are at least seven years older than their victims (instead of 10).  (Legislative Analyst, at p. 43.)  Notably, section 269 is not a qualifying offense with respect to section 667.6, subdivision (c) or (d).  The fifth change, titled "longer penalties for specified sex offenses," provides as an example, that the initiative "expands the list of crimes that qualify for life sentences in prison."  (Legislative Analyst, at p. 43.)  Section 667.6 does not provide for life sentences; the Legislative Analyst appears to be referring to the changes to section 667.61 (aggravated sex offenses) and section 667.71 (habitual sex offenders).  (See Voter Information Guide, Text of Proposed Laws, at pp. 131-132). ~(AA 356)~ Proposition 83 touched dozens of statutes, and there is nothing in the record that suggests the minor changes to section 667.6 were integral to its goals.

Finally, Jessica and Crime Survivors rely on the fact Proposition 83, like many initiative measures, contains an amendment clause that limits amendments to any of its provisions.  We are not persuaded.  Their effort to bootstrap the

32

amendment clause to show the voters wanted to insulate every provision of the statutes restated in the initiative would render the *San Diego* test meaningless.

Because Proposition 83 did not substantially change section 667.6, subdivisions (c) and (d), and Jessica and Crime Survivors have not shown that those subdivisions were integral to accomplishment of the electorate's goals or that the voters reasonably intended to insulate subdivisions (c) and (d) from amendment, the Legislature properly amended those provisions through the ordinary legislative process.  Accordingly, Jessica and Crime Survivors have failed to prove the Board and CDCR had a duty not to conduct youth offender parole proceedings under section 3051.

## DISPOSITION

We affirm the judgment denying the petition.  The parties are to bear their own costs on appeal.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.